UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. PEARSON,<br><br>          Plaintiff,<br><br>   v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>          Defendants. | No.  2:14-cv-0645 MCE CKD P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S.C. § 1983.  The claims which remain are against defendants Derocco, Guzman, Sacks, Lidge, Hinrichs and Daly (defendants), all current or former employees at California State Prison, Sacramento (CSP-Sac), for violations of the Eighth Amendment.  Defendants have filed a motion for summary judgment.[1]

I. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] In his complaint, plaintiff asserts he is seeking damages as well as injunctive relief.  However, plaintiff is no longer housed at CSP-Sac (a prisoner's claims for injunctive relief generally become moot upon transfer, Andrews v. Cervantes, 493 F.3d 1047, 1053 n. 5 (9th Cir. 1991)) and this action is not proceeding on any claims concerning plaintiff's current conditions of confinement at Kern Valley State Prison.

1

Civ. P. 56(a).  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce

the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II.  Plaintiff's Claims

Plaintiff's claims concern the fact that shortly after he arrived at CSP-Sac, the "single cell status" he temporarily maintained at his previous prison was terminated and plaintiff was forced to "double cell." Plaintiff asserts all remaining defendants contributed to his being "double celled" and to injuries which he alleges he suffered as a result.

Plaintiff's claims arise under the Eighth Amendment's prohibition against cruel and unusual punishment. In order to prevail on such claims, plaintiff must show that any injuries suffered by him were the result of: 1) his being incarcerated under conditions posing a substantial risk of serious harm; and 2) a defendant's deliberate indifference to that risk. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To be deliberately indifferent, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

/////

/////

/////

3

III. Defendants' Arguments And Analysis[2]

    A. Derocco, Guzman and Hinrichs

Plaintiff is serving a sentence of 75 years-to-life imprisonment for first degree murder. He began serving his sentence in the California Department of Corrections (CDCR) in 2004. On June 8, 2012, plaintiff was transferred to CSP-Sac, from the R.J. Donovan Correctional Center near San Diego. On June 21, 2012, plaintiff's "single cell status" which plaintiff maintained at R.J. Donavan was continued at CSP-Sac "based upon pending [institutional classification committee] single/double cell review." Compl., Ex H. Plaintiff's "classification committee" meeting regarding his "single cell status" was held on November 27, 2012. Defendant Derocco, the Captain of C-facility at CSP-Sac which was the facility where plaintiff resided, was the chairperson at the meeting. Defendants Hinrichs and Guzman were also on the committee. In the report following the committee meeting, the committee members found as follows:

> Committee elects to place [plaintiff] on double-cell status based upon no documented history of in-cell violence, predatory behavior and/or victimization concerns. [Plaintiff] was placed on single cell status by ICC at RJDCF pending a mental health evaluation on 5/10/12. Per Dr. Sacks, UHR reflects mental health evaluation was conducted on 5/15/12 at which time he was deemed appropriate for D/C housing. 1 week later, [plaintiff] was transferred to [CSP-Sac]. [Plaintiff] attempted to convince [the committee] that he could control his actions outside of the cell but not in the cell. He appeared to be manipulating [the committee to keep him [sic] Single Cell status.

Compl. Ex. L.

Exhibit A attached to the declaration of defendant Sacks is a document written by Licensed Clinical Social Worker Frey at R.J. Donovan dated May 15, 2012. In the document Ms. Frey indicates plaintiff was evaluated on May 14, 2012. She noted that despite plaintiff's reports of increased anxiety allegedly prompted by thoughts of plaintiff having a cellmate, and plaintiff's indication that he feared he would hurt a cellmate, Frey found "no mental health symptoms indicat[ing] [plaintiff] requires a single cell."

---

[2] Unless otherwise indicated, the facts identified below are not disputed by plaintiff. Also, the court does not identify allegations from plaintiff's complaint which: 1) do not at least in part form the basis of a claim upon which it is at least arguable that relief can be granted; or 2) are only relevant to claims which have already been dismissed.

4

1          In his complaint, plaintiff alleges he told the committee that he was afraid of being
2   sexually assaulted again like when he was a small boy and while he was at Salinas Valley State
3   Prison.  He also said cellmates normally do not like plaintiff because plaintiff sleepwalks and has
4   to sleep with a light on due to paranoia.  Finally, plaintiff indicated that due to the voices in his
5   head, he feared he would either kill a cellmate, or be killed if he were forced to have one.
6          Plaintiff also alleges in his complaint that defendant Guzman told plaintiff that defendants
7   Dr. Lidge, a psychologist, and Dr. Sacks, a psychiatrist, both approved plaintiff for double
8   celling.  In declarations provided with their motion for summary judgment, both defendants Lidge
9   and Sacks agree that plaintiff was "compatible" for double cell housing on November 27, 2012.
10  ECF No. 27-8 at 3; 27-9 at 3.  Defendant Sacks admitted that she informed defendant Guzman
11  before the classification committee hearing that it was her opinion that plaintiff could be double
12  celled.  ECF No. 27-9 at 3.  There is nothing before the court indicating that any medical
13  professional was of the opinion that plaintiff should not have a cellmate.
14         Finally, plaintiff alleges that before the end of hearing he asked that committee members
15  review his central file and medical records.  However, plaintiff does not assert that did not occur,
16  nor point to any documentation not considered by the committee which reasonably would have
17  affected the outcome.   In particular, plaintiff fails to point to any documentation regarding the
18  sexual assault which allegedly occurred at Salinas Valley State Prison referenced above.
19         On December 4, 2012, inmate Denton was assigned to be plaintiff's cellmate.  On
20  December 11, 2012, plaintiff alleges he had an altercation with inmate Denton which resulted in a
21  back injury.  However, at his deposition, plaintiff testified that he "blacked out" during the
22  incident and does not recall striking, nor being struck by inmate Denton.  ECF No. 27-1 at 73.  A
23  lower back injury manifested itself the next day, but plaintiff does not know exactly how he hurt
24  his back.  Id. at 73.  Plaintiff fails to provide any details as to what caused the altercation with
25  inmate Denton.
26         In light of all of the evidence before the court, the court finds that there is no evidence that
27  defendants Derocco, Hinrichs or Guzman were deliberately indifferent to a substantial risk of
28  serious harm when they approved plaintiff for double celling.  The record before the court

indicates that the only evidence considered by the committee suggesting plaintiff had a legitimate need for single cell status was provided by plaintiff verbally at the hearing and the committee found that plaintiff was attempting to manipulate the committee. Generally speaking, the court must give deference to the professional judgment of prison officials. Beard v. Banks, 548 U.S. 521, 528 (2006). Also, given plaintiff's self interest in obtaining a cell for himself, a substantial risk of serious harm cannot be established, objectively speaking, based only upon statements made by plaintiff regarding his mental condition. Put another way, the court cannot find that a basis for liability exists under the Eighth Amendment with respect to defendants Derocco, Hinrichs and Guzman simply because they chose not to believe an inmate attempting to obtain a significant benefit for himself, especially considering the lack of any significant corroborating information, and the fact that plaintiff had been incarcerated for approximately eight years to that point without a documented instance of violence with a cellmate.[3]

Furthermore, there is not sufficient evidence before the court suggesting that defendants caused plaintiff any physical injury by approving him for double celling. Plaintiff does not provide any details regarding his altercation with inmate Denton and he does not recall striking Denton or being struck by him. Because plaintiff fails to put forward any details as to the altercation with inmate Denton, or how plaintiff came to injure his back, there is no link between defendants' actions and plaintiff's back injury.[4]

---

[3] At his deposition, plaintiff testified that there were three instances where he was involved in altercations with cellmates at the Los Angeles County Jail. While plaintiff does not indicate when they occurred, the court assumes it was before he arrived at CDCR in 2004. Nothing suggests defendants Derocco, Hinrichs and Guzman had access to any information regarding plaintiff's housing at the Los Angeles County Jail prior to or during the classification committee hearing on November 27, 2012.

[4] Plaintiff suggests that due to the classification committee's decision to "double cell" plaintiff, plaintiff suffered from an "anxiety attack." Plaintiff also indicates at times he felt "homicidal" and suffered from auditory hallucinations. Finally, he indicates that after inmate Denton was placed in his cell on December 4, 2012, plaintiff did not eat or sleep until December 10, 2012 and that he could not "control his thoughts." First, plaintiff cannot obtain compensatory damages with respect to these alleged injuries since plaintiff fails to point to evidence indicating defendants caused him physical injury. 42 U.S.C. § 1997e(e). While it is at least possible that plaintiff could obtain nominal damages based upon these alleged injuries, Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002), the court reiterates that classification committee defendants were

For these reasons, the court will recommend that defendants' motion of summary judgment be granted with respect to plaintiff's remaining Eighth Amendment claims against defendants Derocco, Hinrichs and Guzman.

B. Doctors Lidge and Sacks

Plaintiff alleges that after his "classification committee" meeting on November 27, 2012, he met with both defendant Dr. Lidge and defendant Dr. Sacks. Plaintiff alleges he told both defendants he was feeling homicidal and they failed to relay this to custodial staff. Plaintiff also told Dr. Sacks he was afraid of being raped or killed and was hearing voices. Plaintiff also makes the following allegations regarding Lidge and Sacks in his complaint:

1. Shortly after the "classification committee" hearing on November 27, 2012, Plaintiff told Dr. Lidge that he did not want to continue to take the medication he had been taking[5] because it made him sleepy and he did not want to be sleepy while having a cellmate for fear that a cellmate might take advantage. In response to this information, Dr. Lidge discontinued plaintiff's medication.

2. Plaintiff asked why Dr. Lidge was not present at the "classification committee" hearing and Lidge responded that no one told him about the hearing.

3. Plaintiff asked Dr. Sacks why she "cleared" plaintiff for "double celling" and Dr. Sacks responded "I didn't clear you."

The court has reviewed all of the evidence before the court and finds that there is no evidence Dr. Lidge or Dr. Sacks were deliberately indifferent to a substantial risk of serious harm with respect to plaintiff. Plaintiff made his fears with respect to double celling known to the classification committee so there was no reason for Lidge or Sacks to relay plaintiff's concerns to custodial staff after the hearing. To the extent plaintiff is attempting to allege Lidge or Sacks should have recommended to the committee that plaintiff should not have been "double celled"

---

not deliberately indifferent to a substantial risk of serious harm when they approved plaintiff for double celling.

[5] In his declaration, Dr. Lidge indicates he had prescribed Geodon and Risperdal to help with plaintiff's depression and auditory hallucinations. ECF No. 27-8 at 2.

plaintiff fails to provide any evidence suggesting as much, or that their recommendation would have been followed.

For these reasons, defendants' motion for summary judgment with respect to plaintiff's remaining Eighth Amendment claims against defendants Lidge and Sacks should be granted.

C. Daly

On November 27, 2012 and December 4, 2012, plaintiff filed appeals through the inmate grievance process at CSP-Sac concerning the classification committee's decision to approve plaintiff for double celling. Both appeals were submitted to defendant Daly, appeals coordinator for CSP-Sac, and both appeals were rejected because plaintiff failed to comply with certain procedural rules.  As indicated above, plaintiff fails to present facts indicating the classification committee was deliberately indifferent to a substantial risk of serious harm by approving plaintiff for double celling.  Plaintiff fails to point to anything presented on appeal, such as additional material evidence, suggesting the court should not make the same finding with respect to the appeal of that decision.

Finally, as with defendants Lidge and Sacks, plaintiff also alleges that Daly failed to "notify custody staff or the officer in charge of the threat of harm or safety concerns of plaintiff." Compl. at 18.  Again, this is irrelevant since plaintiff himself informed the classification committee of his concerns.  To the extent plaintiff wished to bring events occurring after the classification committee hearing to the attention of "custody staff," plaintiff does not point to anything suggesting it was not plaintiff's responsibility to do so or that he could not do so. [6]

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 27) be granted; and

2. This case be closed.

////

---

[6] As argued by defendants, defendants are also entitled to summary judgment based upon the qualified immunity doctrine because plaintiff has not put forth sufficient evidence to establish at least a genuine issue of material fact as to whether defendants conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

1     These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 26, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
pear0645.57